This case on our calendar this morning is case number 18-1039, United States v. I don't know how to pronounce the name, so I'm not even going to try. May it please the court, my name is Howard Pincus from the Federal Public Defender and I represent Ismael Duzyurt. Mr. Duzyurt was sentenced by a Texas state court to a two-year sentence to begin two and a half years earlier. Because Mr. Duzyurt served no time in prison on that sentence, it was not a sentence of imprisonment under Application Note 2 to Section 4A 1.2 of the Guidelines. The district court therefore erred in increasing Mr. Duzyurt's guideline range based on that sentence and this court should reverse for plain error. Application Note 2 says that to qualify as a sentence of imprisonment, the defendant must have actually served time on such sentence. But Mr. Duzyurt served no time on his April 22, 2005 state court sentence. He was not even arrested on that charge until April 18, 2005 and the state court made that two-year sentence begin to run on September 16, 2002, more than two and a half years earlier. So the sentence expired by its terms in September of 2004. If what happened was that Mr. Duzyurt was given credit for his earlier federal, his earlier custody on a federal charge in which he was held from September 17, 2002 until April 18, 2005, and that's not what the state court directed, the result is the same. Mr. Duzyurt was not in custody on the state charge when he was being held by the federal authorities as he was not even arrested on that charge until the federal term expired in April of 2005. Under Application Note 2, the state sentence was not a sentence of imprisonment. The district court therefore erred in assessing it three points as a sentence of imprisonment of more than 13 months. Although it was a prior sentence, it should have received no points because it was outside the 10-year time limit for prior sentences as it was imposed more than 10 years before Mr. Duzyurt's offense conduct in this case began. How do you... What about Prong 2? I mean, do you ever get a circuit split? You know, I mean, you acknowledged it, that it's very difficult to show that there's an obvious error when there's a circuit split in the absence of the 10th Circuit in a holding expressly weighing in on the circuit split. So how do you overcome Prong 2? Well, it's certainly true that in general this court will not find error in the absence of a circuit split or in the absence of 10th Circuit or Supreme Court precedent. But it will do so where a guideline or a statute is clear as an overhaul and lots of other cases. And that's the case here. The 5th Circuit, the 6th Circuit, and the 11th Circuit have all followed the plain language of the guidelines of the application note and held that credit for a previously served sentence is not the service of sentence... service of time in custody on the sentence at issue, on a later sentence. As the 6th Circuit in Hall said, that's the cold reality of the situation. That it's not actually... The defendant in that case has not actually served time in custody on the later sentence. The contrary decision in United States v. Staples ignores the plain language of the application note. The court... The application note says in its first sentence, again, that the defendant must have actually served time on such sentence. And that's inconsistent with the 7th Circuit's reasoning that it doesn't matter how or when the sentence is served. The application note specifically directs that there must be service of time in custody on the sentence at issue. It wasn't here. Immediately after, we have that maybe problematic C4A1.2A3 and B2, which, of course, suspended sentences. And is simply saying that to the extent a sentence involves suspended time, that doesn't count as actually served. Doesn't that hover over that first sentence? Can we read the first sentence simply to say just that, that suspended time doesn't count? I think you have to read the sentence by what the actual words used by the Commission. The Commission could easily have said that it was talking about suspended sentences. It didn't say so. The usual function of a citation is not to limit the sentence. We have to take the Commission at its word as to what it was saying. And what it said was that there has to be actual time spent in custody on such sentence. Yes, suspended sentences may be a time when, at least a fully suspended sentence, where there isn't time spent in custody on the sentence. But there are others. What if I thought, and I think plausibly, the Sentencing Commission never thought of this situation where a second court long after the fact would apply a sentence to one already expired. Therefore, none of this even talks about that. The guidelines don't say one way or the other about that. Where would that leave your client? Well, I think we still win there because what the Sentencing Commission said was it announced a general rule. You must have served time in prison. It drew a line. The line was if you serve time in custody on the sentence at issue, it's a sentence of imprisonment. There may be reasons, times when you haven't served time in custody on that sentence. And in those situations, one of which is suspended sentences, may be the most obvious one. It doesn't count as a sentence of imprisonment. But the Sentencing Commission chose to adopt a bright line general rule. And that rule requires that there be service of a sentence of imprisonment or service of time in custody on the sentence at issue. And that didn't occur here. Well, but those are the easy ones, the ones that the Sentencing Commission would have contemplated. The language just fits like a glove. But then we get this outlier kind of bizarre world thing where we're applying sentences after the fact. And I understand your argument. It says actually serve, so come on, actually serve. But is it really talking about that? And I guess what I'm asking is if I thought at the end of the day after we study this over that the commission's language just doesn't apply to this situation, nobody thought about it, is there some rule that you can rely on to say, well, when it's in doubt under the guidelines, the commission has not addressed something, my client wins? Well, one would be that we have conflicting, we had two circuits before Mr. Desiart's sentence that went our way, and only one that went the other way. So if the commission had thought that the majority rule was wrong, presumably it would have done something about it, but it didn't. But I think really the cleanest argument and the right way to look at this is the commission chose to adopt a general rule. It's not usually the function of a citation to limit that rule, to say, oh, they only meant suspended sentences. If they had wanted to do that, they could have addressed suspended sentences there. They could have, and in fact the guideline itself talks about suspended sentences. You only consider the unsuspended portion. So it wouldn't even have been necessary if that's all that it was doing. And the commission spoke, again, in general terms, and we have to take the commission at its word. What about Cruz, the dicta in Cruz Alcala, where the panel said that the guidelines make no distinction as to how or when the defendant must serve the sentence and cite it with approval staples? Well, in Cruz Alcala, he had actually served time in custody on that sentence. That's why it's dicta, right. It was adopting that portion of or approving of staples to that limited extent to say, it doesn't matter if you've served time before the sentence was imposed. You don't have to then go to prison. But it was linked directly to the sentence, and that's the distinction that the other circuits have made, the Fifth and Sixth and the Eleventh Circuit, where the time spent in custody is directly linked to the sentence at issue or where there are concurrent sentences. So you can be said to be serving both sentences at the same time. Then you are serving time on such sentence, but you're not where the time in custody was served long before the sentence was, in the sentence at issue, was even imposed, and here where there wasn't even an arrest on the state charge until after the federal sentence had expired and after the two-year time from September of 2002 to September of 2004 had expired. So this court did not face that issue in Cruz Alcala. All it was saying was if you served time in custody before the sentence was imposed and you're getting credit for that, that counts. We have no dispute with that. That's absolutely correct. Very different situation than here, obviously. Sorry. I'm going to interrupt you again. Don't forget what you were about to turn to. I want to probe a little bit about one of the things that you said in answer to Judge Phillips' question about, and you said it in your brief, that the purpose of a citation is not to delimit the text itself. Your adversary says the opposite. It doesn't take very long to find a whole slew of cases in our circuit, I think, elsewhere where courts have said what you've said and courts have said what your opposing counsel have said. It's somewhat of a philosophical issue, perhaps, about what is the utility, what is the function of a citation. Does it shed a gloss, as your adversary argues, on the meaning of the text itself or is it, as you put it, really it's a port but it cannot limit or otherwise qualify the actual meaning of the text preceding the site? If there's not clear guidance in our precedent on whether a site can shed light on the meaning of the text itself, isn't that a reason in itself to say that this may be an error but it's not an obvious error because of the site, the guideline provision with regard to civil sentences? No, I think you'd go back to the general rules of statutory construction, which is we look to the plain language. And the plain language of that sentence is that there must be service of time in custody on the sentence at issue. If that were somewhat ambiguous, then a citation might shed light on what was meant. But the commission chose its words carefully and it said it has to be service of time in custody on such sentence. There's no ambiguity there. There's no reason to read into that language a limitation that doesn't appear on its face. The guideline error here resulted in the wrong, in Mr. Dozier being in Category 4 rather than Category 3. And the usual situation is that if the wrong starting guideline range is used, that there will be an effect on substantial rights. There's even more reason to think that here than in the usual case because the district court tied its variant sentence to an offense level of 10 and then used what it thought was the right category of 4, which produced a range of 15 to 21 months, and it sentenced within that range to 20 months. If it had instead realized that Mr. Dozier was in Category 3, at offense level 10 he would have been in a range of 10 to 16 months. And there's every reason to think the court would have sentenced him within that range also. As for the fourth prong, as the Supreme Court has held in Rosales-Morales and as this court earlier held in Sabayon-Umana, ordinarily the fourth prong is satisfied and this court should exercise its discretion when there is a plain error that affects substantial rights. So this court should vacate Mr. Dozier's sentence and remand for resentencing using the correct criminal history category of 3. Thank you. Thank you. We'll hear from Mr. Murphy. Mr. Pegas, members of the court, my name is Jim Murphy and I represent the United States. The record in this case, Your Honor, does not show any clear and obvious error in the court's assessment of criminal history points for the defendant's Texas felony theft conviction. There was a sentence of two years pronounced. That's very clear. There is nothing in the record to suggest it was suspended. It seems to be accepted, even though the state judge was not quite explicit on the subject, it seems accepted and was accepted below that essentially he was sentenced to time served. There are a couple of points that Mr. Pegas has made that I want to respond to. One of them is that it really doesn't make sense to say he served time on this Texas conviction because he hadn't even been convicted of it at the time that he was serving the federal sentence. With all due respect, almost all time served sentences are that way in any court system. You're in pretrial, typically, the ordinary case. You're in pretrial incarceration. You negotiate. You plead guilty. Judge says, all right, you served enough time, time served. And so you served your sentence. It may sound odd to articulate it, but it's true in its routine. You served your sentence, actually, before you pled guilty and were convicted. So that is not an obstacle to the finding. Well, I think what Mr. Pegas would say, may say it in his last minute and 40 seconds, is, well, that's why he thinks all time served sentences are not actually serving a sentence, serving imprisonment on such sentence. But they are. Because there is a sentence pronounced, and that's what the guidelines focus on. If we look at the text of the guidelines, they are very, very keen and very focused. I understood Judge Phillips is saying, well, they don't really answer the question, and that's true. I mean, specifically, they don't address time served sentences, even though they're routine in the criminal justice system. But the rules set out in the guidelines do speak very clearly to this situation. Let me probe that. Okay, go ahead. The sentence pronounced. No, you go ahead. I have a question, but I didn't want to interrupt you. Okay. Sorry. I'll finish up this thought, Judge. It's the sentence pronounced, not the time actually served, subject to the qualification. You have to serve some time. And the reasoning, when we look at the application note, which says it's not the time served, but then says you have to serve something, because otherwise it's not really a sentence of incarceration, which is true. Right. Well, what he's going to say is that if you quote what you just said, and I can't do it, but that you have to have actually served some time. Some time. Right. On such sentence, on this sentence, correct? Yes. And so what he's going to say is the adverb actually means something, and true. If he had actually served one day, I don't think Mr. Pekus would be making his argument, but he's saying he didn't actually serve ten seconds on this sentence. And so I struggle with the Staples rationale that, well, it's this fiction, it makes sense. I don't question that. But how do you reconcile that with the adverb actually? And even the comment that you just made. He actually had to have served at least a day or an hour of imprisonment on such sentence. He didn't. He didn't actually serve a second on this sentence. Well, but he did, Judge. And the situation is analogous to concurrent sentences, which once again are routine. And if you have two sentences, it doesn't matter. They're different offenses. It doesn't matter if they're state and federal or both the same system. Routinely, prisoners will serve them together. So you're actually serving that time. One period of time on one sentence. The other one sits beside it and is satisfied by that service. But you're actually serving both sentences. And this defendant, Mr. Dusert, served 31 months in federal custody. How much are you relying on C4A1.2A3 and B2? In other words, if we scratch that out of the book, if the sentencing commission had not used that language, would your argument be the same or are you dependent upon that? Because as Judge Bacharach says, actually served is plain English. Yes. But I think when they say actually served, they mean you have to spend time on a sentence. I mean, because you could say the same thing, Judge, about concurrent sentences. No, I don't think you say the same thing with them. You're serving that sentence. You are serving that sentence. Yes. But on the suspended sentences, in one sense, because we almost don't need to get there. Almost, I think we do. But the sentence here wasn't suspended. There's no argument that it was. And he did serve 31 months in federal custody, and the judge considered that to be time served on the state sentence. But even if we go to the citations that you're talking about, Judge Phillips, concerning suspended sentences, that portion of the application note immediately follows, or follows some distance, as I recall, the primary observation that it's the sentence pronounced, not time actually served. But then they say, well, you've got to serve something. And they say, see these guidelines, and they pertain to suspended sentences. And that's the only reference and the only qualifications on the overarching guideline principle that it's the sentence pronounced, the maximum sentence, not the time actually served. And I understood Mr. Pincus to say, well, they could have spelled all of this out. Okay, they could have, but they didn't. And the only qualification and the only limitation the Sentencing Commission in fact listed was suspended sentences, and that didn't happen here. Go on. Actually served. That's in granite. I don't know of any case that says the words actually served preclude concurrent sentences. I don't contend that they do. But I don't think this is a concurrent sentence. The sentence had expired. Well, it was somewhat unusual. We could call it a retroactive concurrent sentence. But you can impose or you can serve the sentence. The point I was making earlier, like in pretrial incarceration, and then there's the conviction and the sentence. And we'll say, oh, okay, well, you already served it. That's kind of what happened here. If we're going to add time, and it can be a significant amount of time, especially if courts start sentencing like this more routinely, if we're going to add that kind of time, that's a serious matter. That's a big deal. Shouldn't we require something better than see this 4A1.2? Why shouldn't we just focus on actually served and say it wasn't? What's the harm? Because it's not a clear – well, I have a number of responses to that. Before I forget, you're concerned with the equity of the situation, obviously. Well, I'm concerned with the plain language and what the commission meant by its plain language, and then saying by that plain language it would make sense to me that it would be an equitable result. Okay, Judge, let me address that. What would make sense here? What would be most consistent in implementing what the Sentencing Commission seems to want to accomplish here? What we have is a fortuity. We have this whole question arises because the defendant committed a number of serious crimes around the same time in 2002 in Texas. Because of that and the difficulty, reading into the record, of shuttling people back and forth, the state just said, fine, take them. And they did. This happens all the time. And he served his federal sentence, and then they go back and say, well, we're not letting you off. It's two years imprisonment, but we're not interested in having you serve more time here. Okay, and so we have this issue. What if the defendant had committed his crimes on much different occasions, very separate crimes, all serious felony crimes? We wouldn't have this problem. We have a fortuity occasioned by the defendants. It's not that he was trying to cause this. I'm sure he wasn't thinking about it. But it's occasioned by the defendants' own criminal acts committed very close to one another. And he should not benefit from that. If he had committed them further apart, we'd have no problem and there would be no issue. He'd have served two completely separate sentences. And I know you have several other responses you want to get to, but I don't want to interfere with that. But how does that part of your answer pertain to Judge Phillips' concern with the word actually? I mean, it might be unfair, but, you know, you don't have judges comprised of King Solomon up here. We're just trying to do what the law compels. And there is this word actually that we're struggling with. And so I think Judge Phillips is asking, and I share that, is how do you reconcile what you just said with the word actually? Well, I wasn't specifically addressing the actually word here. I was trying to address Judge Phillips' concern with the equity of the situation and trying to square what we're dealing with here with sentencing commission policy and what makes sense. Oh, sorry. That was my purpose, Your Honor. Okay. Sorry. Going back to what does the word actually mean, honestly I think the Court's reading too much into an adverb. Okay. I don't know what actually served and served really mean. I don't know if the sentencing commission meant a distinction there. Well, actually served is different than theoretically served. All right. I'm not sure what theoretically served means. It means that he never actually sat down in that prison cell on the second sentence. Okay, because sentence was suspended. But my other position to try and get back, obviously Judge Bachrach, and I know you, Judge Phillips, have an issue with, what does actually mean? Well, he did, if you mean sitting in a prison cell, he did that. Thirty-one months federal custody, and it's exactly like a concurrent sentence. That's my position. Okay. Yes, he did actually serve time. Even if the judge went back later and said, well, okay, we'll call it time served. A time served sentence, and I think it's consistent with the Cruz decision, is actually time served. Well, Cruz Ocala was dealing with pretrial detention, and that is unquestionably time served on such sentence. You know, if you get a sentence of one year and you spend three months in pretrial detention, I think it's under 3585 if I'm not mistaken, you get credit for that one year for the pretrial detention because that is time served on such sentence. Cruz Ocala's issue was, maybe it was hard of the panel, in retrospect it seems pretty easy. But it seems quite different than if it's an unrelated sentence. Well, it's slightly different, but they do make clear that a time served sentence counts, and here it was accepted below, and I think the record supports that this was a time served sentence. And with all due respect, I don't think the word actually reflects any deep meaning by the sentencing commission. I don't think that they're saying he has to sit one place rather than another place, which would be inconsistent with concurrent sentence practices. Perhaps very briefly in my time left, I should address the last two elements of plain error review. I don't think it's necessary to get there because there is not clear error. There's a circuit split, and by the way, on the merits on the issues, it basically is three on the defense side, one, the seventh circuit on the government side. However, your honors, if we look a little more closely on the specific question of are the guidelines clear and obvious, the split goes the other way. I believe it was the fifth circuit in Carlisle, yes, that said, okay, well, we're going to say this is error, but it's not plain error because the guidelines simply aren't clear and there was no law on this circuit. The eleventh circuit in Butcher apparently wasn't reviewing for plain error, but they said the language of the guidelines, and I'm quoting here, occasions a cause for pause, end quote, over what they mean. So the other circuits, even though they finally decided to go the other way on the merits, said this is not at all clear. And so I think we got sort of instead of a 3-1, it's now 1-3 for it's not clear and obvious error. I wanted to get that in. On the prejudice prong, it comes down to how you read the record. Most of us are familiar with Supreme Court President Molina and Rosales. They didn't really change the law. They changed the law on some circuits, but the standards they overturned were never the law on the tenth circuit, like the shock of conscience test. This court never had that. But the government still, well, actually the defense has to show a substantial likelihood probability that the sentence would be different. And if the variance in this sentence is closely linked to the guideline range, I would agree that it would need to go back. I'm not going to dispute that. Here, I think if we read the transcript, it's very clear that the sentencing judge looked at the guidelines and said, well, I don't agree with this. The guidelines increased greatly during the one-year period, and she said, well, I'm going to use the old ones just to be lenient. She then also threw out an eight-point enhancement. So the court really wasn't imposing a guideline sentence. What she said in the record, and I think it's page 89 of the record, is, to me, the appropriate range is 15 to 20 months. It's actually 15 to 21. Difference doesn't matter. That's just the range she wanted. And this is not the ordinary case where a variance is directly linked to a guideline. She just said, well, I like this guideline range. She's required to use the guidelines. And I think there is record evidence this is not an ordinary case and that the defendant has not shown a substantial probability that the sentence would be any different on remand. We went from 40 to 50-some months to a 20-month sentence, and that is not unfair. Thank you very much, Your Honors. Thank you, Mr. Murphy. You probably went a minute and ten over, so if you'll add a minute and ten to Mr. Pincus' time. Just a couple of brief points. First, Carlisle, the Eleventh Circuit, or the Fifth Circuit, didn't say that the guidelines weren't clear. What it said was, we don't have precedent on this point, and therefore it can't be plain under its law. But this Court doesn't adhere to such a strict requirement on plainness. If the guidelines are clear, then there can be plainness, and that's the case here. In Buder, the Eleventh Circuit did say, you know, the guidelines occasion some pause, but then it went on and very clearly found that under the guidelines, you had to actually serve time on the sentence at issue. And that's what the Sixth Circuit said in Hall. That's the meaning it gives to actually. It emphasized the actually served language, and actually means that it's not deemed or theoretical. Nobody would have said that Mr. Dussert was serving sentence on the state charges when he was in federal custody, when those state charges hadn't been brought at that point. At best, he was deemed to have served the sentence, but that's not service on the sentence that the state court imposed long after the two-year period had expired. At best, we have a deeming of the service of sentence, and that's not actual service of the sentence, which is the plain language of the guidelines. So there is plain error here, and this court should find that it affected substantial rights and exercise its discretion to notice the error and remand for resentencing with a criminal history category of three. Thank you. How do you respond to Mr. Murphy's argument about concurrent sentences? Well, certainly if there's concurrent sentences, you're serving both sentences at the same time. But he was not serving the state court sentence when he was in federal custody from September 17th of 2002 until two years later when he wasn't even charged in September of 2004, obviously, when he wasn't even charged with the state offense until April of 2005. At best, we have the giving of credit, which is the deeming of service of sentence, and that's not actual service of sentence, which is what the application note plainly requires. Thank you. Thank you. This was well represented by both sides. We appreciate your excellent advocacy and your briefs and argument today. This matter will be submitted.